IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| DANIELLE WASHINGTON, Personal Representative of the ESTATE OF CALVIN WITHERSPOON, JR. | ) ) ) ) | CASE NO. 3:21-148-TLW |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **COMPLAINT** *JURY TRIAL DEMANDED* |
| HOUSING AUTHORITY OF THE CITY OF COLUMBIA aka COLUMBIA HOUSING AUTHORITY aka COLUMBIA HOUSING, | ) ) ) ) | |
| Defendant. | ) | |

NOW COMES Plaintiff, by and through counsel, and alleges as follows:

## PARTIES

1. Plaintiff Danielle Washington is *sui juris,* the daughter of Calvin Witherspoon, Jr., decedent, and the duly appointed Personal Representative of the Estate of Calvin Witherspoon, Jr. by the Probate Court of Richland County. At the time of his death on January 17, 2019 as a result of acute carbon monoxide toxicity, Calvin Witherspoon, Jr. was a resident of Unit J-3 in Allen Benedict Court Apartments in Columbia, South Carolina.

2. Defendant Housing Authority of the City of Columbia a/k/a Columbia Housing Authority a/k/a Columbia Housing (hereinafter "Columbia Housing Authority") is a public body, body corporate and politic organized under the laws of the State of South Carolina and was created by City of Columbia. Columbia Housing Authority is a public housing authority that owned, operated and maintained the Allen Benedict Court Apartments in Columbia, South Carolina where Calvin Witherspoon, Jr., deceased, resided at the time of his death.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

4. Venue is proper under 28 U.S.C. § 1391(b)(2) in that a substantial part of the acts and omissions that led to the death of Calvin Witherspoon, Jr. occurred in Columbia, South Carolina.

## FACTS

5. The Columbia Housing Authority and its operations exist and are authorized by S.C. Code Ann. § 31-3-10 *et seq.,* and was created by and for the City of Columbia under its 1937 Housing Act for the purpose of providing decent, safe and sanitary housing to the low and moderate-income residents of the City of Columbia.

6. Defendant Columbia Housing Authority is and was governed and organized as follows:

    a. The Executive Director of the Columbia Housing Authority was at all times the chief executive officer of Columbia Housing Authority, who was hired by, reported to and was supervised by its Board of Commissioners. The Executive Director was responsible for, amongst other duties, implementing and executing the policies of the Board of Commissioners in the management of the operations of its properties, including the Allen Benedict Court Apartments; and

    b. The Columbia Housing Authority Board of Commissioners, (hereinafter "Housing Commissioners") were the Columbia Housing Authority's legal governing and policy-making body. The Housing Commissioners were vested with complete authority and responsibility as set forth in S.C. Code Ann. § 31-3-10 *et seq*, including but not

limited to, management of its financial affairs, responsibility for all of its housing policies, and the supervision and oversight of its Executive Director. Specifically, this expressly included the power to construct, reconstruct, alter, repair and operate the Allen Benedict Court Apartments.

7. Further, the Columbia Housing Authority and its Commissioners were required by S.C. Code Ann. § 31-3-530, to operate the Allen Benedict Court Apartments in an efficient manner so as to enable it to fix the rentals the lowest possible rates consistent with providing decent, safe and sanitary dwelling accommodations, including to meet the cost of, and to provide for, maintaining same.

8. In addition, the Columbia Housing Authority and the Allen Benedict Court Apartments, per S.C. Code Ann. § 31-3-580 were at all times subject to the planning, zoning, sanitary and building laws, ordinances and regulations applicable to other properties located within the City of Columbia.

9. The Allen Benedict Court Apartments were built and opened in 1940 and were never thereafter revitalized by the Columbia Housing Authority.

10. Over the ensuing decades, the Allen Benedict Court Apartments gradually became more and more dangerous to the people who lived there due to gross mismanagement, absence of oversight, gross neglect of matters of routine maintenance and a deliberate indifference to the conditions of the property and the safety of the people who lived there.

11. The Columbia Housing Authority had long been aware of the decrepit and dangerous conditions at Allen Benedict Court Apartments. For example, in 2006, 2007, 2008, 2009 and 2010 Columbia Housing Authority applied for HOPE VI grants to try to find funds to

revitalize Allen Benedict Court Apartments. The HOPE VI grant program was specifically for severely distressed public housing.

12. The Columbia Housing Authority did not receive any grants nor engage in any revitalization and by 2015 decided to demolish the Allen Benedict Court Apartments, creating a further disincentive to undertake any items of maintenance and repair.

13. On or about 1990, the Columbia Housing Authority installed gas burning furnaces that produce carbon monoxide inside the apartment units at the Allen Benedict Court Apartments.

14. Columbia Housing Authority knew at that time, and all times thereafter, by installing and operating gas burning furnaces that emit carbon monoxide in the Allen Benedict Court Apartments, that this posed an especially lethal danger to the people who lived there because:

    a. Carbon monoxide is especially dangerous and is often referred to as the "silent killer" because it is colorless, odorless and tasteless and would be undetectable by the people who lived there except by a detector and alarm;

    b. The apartment units were small enclosed spaces where people would be sleeping making the risk of carbon monoxide poisoning that much greater;

    c. These dangers, including the carbon monoxide producing nature of their furnaces in their units, were not likely to be known by the people living there, and as such, would not know to take any actions to protect themselves from the danger; and

    d. The dangers and potential harm carbon monoxide poisoning could cause would be greater at the Allen Benedict Court Apartments as most people living there were especially vulnerable people who often suffered from a range of additional issues including: physical and mental disabilities, reduced education and access to

information, chronic health issues and reduced access to healthcare making the risks of exposure to carbon monoxide that much more harmful and less likely to be guarded against or be discovered by them.[1]

15. Because the gas burning furnaces were especially dangerous as stated above, there arose a heightened duty by the Columbia Housing Authority to protect the people living inside the Allen Benedict Court Apartments from these dangers by ensuring that:

   a. Furnaces be regularly inspected, tested and maintained by trained professionals to be certain the lethal undetectable carbon monoxide gas was being properly vented to prevent exposure, injury and death to the people in the apartments;

   b. Carbon monoxide alarms be installed, maintained and tested regularly in each unit to protect the people in the apartments who could not otherwise protect themselves from carbon monoxide gas exposure;

   c. *At a minimum*, people who lived there were educated and/or warned of the dangerous carbon monoxide producing nature of their furnaces, including warning them to buy their own carbon monoxide alarms and warning and educating them on the symptoms and dangers of carbon monoxide poisoning;

   d. The requests for repair and maintenance, especially as to anything related to the gas furnaces and suspicious smells were promptly and fully investigated and remedied, including asking the people in the unit about any possible carbon monoxide symptoms possibly related to carbon monoxide exposure; and

---

[1] The initial symptoms of carbon monoxide poisoning appear like the flu, with headache, fatigue, malaise (a general sick feeling) and sometimes nausea and vomiting. Symptoms worsen and can cause death. People with long-term exposure to low levels of carbon monoxide also can have numbness, unexplained vision problems, sleep disturbances, and impaired memory and concentration.

    e. Adopting policies and procedures to ensure that the Columbia Housing Authority and its properties, including the Allen Benedict Court Apartments, were at all times in compliance with the fire and building codes and any updates to same with notification to the people who lived there of any changes.

16. On October 18, 2016, the City of Columbia adopted Ordinance 2016-076, that included the 2015 International Fire Code, and pursuant to said Code, carbon monoxide alarms were required to be installed in the Allen Benedict Court Apartments given the presence of gas fired furnaces that emit lethal carbon monoxide.

17. Following the installation of the furnaces at Allen Benedict Court Apartments in 1990, and continuing thereafter, including through the years 2016 through 2019, the following were either policy and/or became so widespread and pervasive as to constitute unofficial policy or custom of the Columbia Housing Authority:

    a. The furnaces were never regularly inspected, tested and/or maintained by trained professionals;

    b. Carbon monoxide alarms were never installed;

    c. People who lived there were never educated and/or warned of the dangerous carbon monoxide producing nature of their furnaces, including warning them to buy their own carbon monoxide alarms nor were they educated or warned of the symptoms and dangers of carbon monoxide poisoning;

    d. Requests for repairs and maintenance, especially as to anything related to the gas furnaces and suspicious smells were not promptly and fully investigated and remedied, nor were the people in the unit informed about any possible carbon monoxide symptoms and exposure; and

e. There were no policies or procedures in place to ensure that the Columbia Housing Authority and its properties, including the Allen Benedict Court Apartments, were at all times in compliance with fire and building codes and any updates to same with notification to the people who lived there of any changes.

18. Further, in 2017, Columbia Housing Authority adopted the following policies that defined **a missing or inoperable carbon monoxide detector as a "life-threatening condition"**, required to be corrected by the owner or family within 24 hours.[2] (emphasis added):

> **8-I.C. LIFE-THREATENING CONDITIONS [24 CFR 982.404(a); FR Notice 1/18/17]**
>
> HUD requires the PHA to define life-threatening conditions and to notify the owner or the family (whichever is responsible) of the corrections required. The responsible party must correct life-threatening conditions within 24 hours of PHA notification.
>
> <u>CHA Policy</u>
>
> The following are considered life-threatening conditions:

> Missing or inoperable carbon monoxide detector
>
> Missing, damaged, discharged, overcharged, or expired fire extinguisher (where required)
>
> Gas/oil-fired water heater or heating, ventilation, or cooling system with missing, damaged, improper, or misaligned chimney venting
>
> > The chimney or venting system on a fuel-fired water heater is misaligned, negatively pitched, or damaged, which may cause improper or dangerous venting or gases
> >
> > A gas dryer vent is missing, damaged, or is visually determined to be inoperable, or the dryer exhaust is not vented to the outside
> >
> > A fuel-fired space heater is not properly vented or lacks available combustion air
> >
> > A non-vented space heater is present
> >
> > Safety devices on a fuel-fired space heater are missing or damaged
> >
> > The chimney or venting system on a fuel-fired heating, ventilation, or cooling system is misaligned, negatively pitched, or damaged, which may cause improper or dangerous venting of gas

---

[2] This policy was pursuant to federal law and prescribed by HUD regulation. This law only applied to privately owned apartments (Section 8) who participated in and received vouchers from their qualifying tenants for rent subsidy.

19. In 2017, when the policy was adopted, Columbia Housing Authority chose not to apply these "Life-Threatening Conditions Policies" requiring, amongst others, carbon monoxide alarms to be installed in the properties they owned, including the Allen Benedict Court Apartments.

20. Despite creating and being responsible for the dangerous state of disrepair and gross neglect existing at the Allen Benedict Court Apartments, the grave risks carbon monoxide posed to the people living there, and the slight effort and low cost needed to remove these risks[3], Columbia Housing Authority did not adopt, create and/or enforce policies including those as to budgeting, reporting, staffing and/or management, to ensure that even life-threatening matters of maintenance, compliance with fire codes, or simple warnings were being provided to the people who lived there.

21. Despite creating, being responsible for and clearly knowing the dangerous state of disrepair and gross neglect existing at the Allen Benedict Court Apartments, including the grave risks carbon monoxide posed to the people living there, and the slight effort and low cost needed to remove these risks, Columbia Housing Authority failed to undertake any supervision or training of its own Housing Commissioners, Executive Director or other employees so as to ensure that even life-threatening matters of maintenance, compliance with fire codes, or simple warnings were being provided to the people who lived there.

22. Further, the dangerous state of disrepair and gross neglect, and the grave risks carbon monoxide posed to the people living at Allen Benedict was made worse due to established official policies and/or customs of deliberate indifference to all matters of reporting of the need for maintenance and repairs, including the absence of any uniform or systematic reporting and

---

[3] The cost of a stand-alone plug-in carbon monoxide alarm is approximately $15-$20. For all units at Allen Benedict Court Apartments, this would have been an expense of less than $5,000. The cost to post warnings and/or educate the people who lived in the apartment units about carbon monoxide is and was negligible.

tracking of repair requests made by the people who lived there, understaffing of its own inspectors and maintenance personnel, such that the people who lived there felt making such requests were futile.

23. As a result, Columbia Housing Authority acted with deliberate indifference and conscious disregard when it subjected Calvin Witherspoon, Jr. to the involuntary and unknowing exposure and ingestion of poisonous carbon monoxide gasses that resulted in his injury and death.

24. As such, through the policies, customs, ordinances, actions and inactions as alleged herein, including the absence of training and supervision of its own Housing Commissioners, Executive Director and its employees, the Columbia Housing Authority was deliberately indifferent and acted with conscious disregard to the clearly established Fourteenth Amendment rights of Calvin Witherspoon, Jr., and of all the people living at Allen Benedict Court Apartments, resulting in the death of Calvin Witherspoon, Jr., from carbon monoxide poisoning.

## THE DEATH OF CALVIN WITHERSPOON, JR.

25. On January 17, 2019, Calvin Witherspoon, Jr. who was living in Unit J-3 at the Allen Benedict Court Apartments, was injured by and then died from carbon monoxide poisoning.

26. Calvin's death was investigated by Columbia Police Chief Skip Holbrook and Fire Chief Aubrey Jenkins, agents of the City of Columbia who made the following findings:

    a. They determined the death of Calvin Witherspoon, Jr. was caused by a faulty furnace that caused carbon monoxide to build up in his apartment;

    b. The furnace that caused his death was 30 years old and a build-up of debris caused a carbon monoxide vent to stop working;

c. The investigation found that no preventative maintenance was done on appliances;

   d. Maintenance reports were inadequate and incomplete;

   e. The Columbia Housing Authority had a single inspector for 2,600 housing units, which was not nearly enough, according to Holbrook;

   f. The death of Calvin Witherspoon, Jr. was totally preventable through regular maintenance; and

   g. There was a perception or belief by many of the people who lived at Allen Benedict that if they complained, things would not be fixed.

27. Following the death of Calvin Witherspoon, Jr., the City of Columbia finally inspected the Allen Benedict Court Apartments and found 869 code violations for a number issues including but not limited to, not having carbon monoxide detectors or working smoke detectors, expired fire extinguishers and exposed wires.

28. The Columbia Fire Department specifically noted "carbon monoxide detectors missing in all 244 units," "carbon monoxide detected in several units which is severe and lethal," "a presence of natural gas, which is unsafe and a severe risk for the community and its occupants," "several stoves leaking gas," outdated stoves, damages ceiling surfaces, and missing, outdated, or non-functional smoke detectors.

29. A total of 26 citations were issued to the Columbia Housing Authority for violations of the City of Columbia and Fire Code Ordinances including for missing carbon monoxide detectors; inoperable and missing smoke detectors; missing and damaged safety devices on fuel-fired space heaters; and natural and/or LP gas and/or fuel oil leaks.

30. Following the death of Calvin Witherspoon, Jr., all the people who lived at Allen

Benedict Court Apartments were evacuated and relocated on an emergency basis.

31. On February 19, 2020, the Columbia Housing Authority pleaded guilty to 24 of the 26 citations that were issued by the City of Columbia and fined $11,000.

32. The Allen Benedict Court Apartments were never thereafter occupied and the buildings began to be demolished on July 6, 2020.

## **42 U.S.C. § 1983 LIABILITY OF COLUMBIA HOUSING AUTHORITY**

33. Plaintiff realleges and reavers all previous paragraphs as if fully stated herein.

34. At all times material to this Complaint, Columbia Housing Authority, acting by and through its Commissioners, Executive Director and employees, was at all times acting under color of state law.

35. At all times material to this Complaint, and as alleged *supra*, Columbia Housing Authority, acting by and through its Commissioners, Executive Director and employees, acted with recklessness and deliberate indifference constituting a conscious disregard for the living conditions and safety of the people living at Allen Benedict Court Apartments, including Calvin Witherspoon, Jr., and violated the following clearly established Fourteenth Amendment substantive due process rights of Calvin Witherspoon, Jr. (including those of his heirs and statutory beneficiaries in their familial relationships with the decedent):

    a.    to be free from government conduct that shocks the conscience;

    b.    to bodily integrity;

    c.    to be free from deliberate indifference to a specific threat of harm;

    d.    to be free from state created danger;

    e.    to equal protection;

    f.      to be free from irrational and wholly arbitrary treatment that subjected him to differing and unique treatment compared to other similarly situated individuals not rationally related to any legitimate government interest.

36. The violation of the clearly established Fourteenth Amendment substantive due process rights of Calvin Witherspoon, Jr. resulted in his injury and death

## CAUSE OF ACTION I
### Official Policy

37. Plaintiff realleges and reavers all previous paragraphs as if fully stated herein.

38. At all times material to this Complaint, Columbia Housing Authority, acting by and through its Commissioners, Executive Director and employees, had official policies as alleged *supra*, of deliberate indifference constituting a conscious disregard to the living conditions and safety of the people living at Allen Benedict Court Apartments, including Calvin Witherspoon, Jr.

39. These policies were the moving force that caused the injury and death of Calvin Witherspoon, Jr. and not only violated his clearly established Fourteenth Amendment substantive due process rights as set forth *supra,* but also the substantive due process rights of his heirs and statutory beneficiaries in their familial relationships with the decedent.

## CAUSE OF ACTION II
### Unofficial Policy - Custom

40. Plaintiff realleges and reavers all previous paragraphs as if fully stated herein.

41. At all times material to this Complaint, Columbia Housing Authority, acting by and through its Commissioners, Executive Director and employees, had unofficial policies and/or customs, as alleged *supra*, of deliberate indifference constituting a conscious disregard to the

living conditions and safety of the people living at Allen Benedict Court Apartments, including Calvin Witherspoon, Jr.

42. These unofficial policies and/or customs were the moving force that caused the injury and death of Calvin Witherspoon, Jr. and not only violated his clearly established Fourteenth Amendment substantive due process rights as set forth *supra,* but also the substantive due process rights of his heirs and statutory beneficiaries in their familial relationships with the decedent.

## CAUSE OF ACTION III
### Inadequate Training & Supervision

43. Plaintiff realleges and reavers all previous paragraphs as if fully stated herein.

44. As alleged *supra*, the Columbia Housing Authority inadequately trained and supervised its Housing Commissioners, Executive Director and its employees.

45. The failure to adequately train and/or supervise its Housing Commissioners, Executive Director and its employees to carry out their duties was done with recklessness and deliberate indifference constituting a conscious disregard to the fact that such action and/or inaction would result in a violation of the substantive due process rights to the people who lived at the Allen Benedict Court Apartments, including Calvin Witherspoon, Jr.

46. The failure to adequately train and/or supervise its Housing Commissioners, Executive Director and its employees to carry out their duties was the moving force that caused the injury and death of Calvin Witherspoon, Jr. and not only violated his clearly established Fourteenth Amendment substantive due process rights as set forth *supra,* but also the substantive due process rights of his heirs and statutory beneficiaries in their familial relationships with the decedent.

## CAUSE OF ACTION IV
### (Survivorship Action)

47. Plaintiff realleges and reavers all previous paragraphs as if fully stated herein.

48. As a direct and proximate result of the acts and/or omissions of the defendant as set forth *supra*, Calvin Witherspoon, Jr. was injured and then died.

49. As a direct and proximate result of the acts and/or omissions of the defendant as set forth *supra* Calvin Witherspoon, Jr. suffered fear, physical pain, and suffering, mental and emotional distress and anguish in the time before his death and his estate incurred funeral expenses after his death, for which his estate is entitled to an award of damages pursuant to S.C. Code Ann. § 15-5-90 and the common law of South Carolina.

## CAUSE OF ACTION V
### (Wrongful Death)

50. Plaintiff realleges and reavers all previous paragraphs as if fully stated herein.

51. As a direct and proximate result of the acts and/or omissions of the defendant as set forth *supra*, Calvin Witherspoon, Jr. was injured and then died.

52. As a result of his death, Calvin Witherspoon, Jr.'s heirs and statutory beneficiaries have lost his aid, comfort, support, society and companionship, and have suffered severe and extreme emotional distress, anxiety, grief and sorrow, for which the Plaintiff is entitled to recover, on behalf of his statutory beneficiaries, damages pursuant to S.C. Code Ann.§ 15-51-10, et. seq., and the common law of South Carolina.

## CAUSE OF ACTION VI
### 42 U.S.C. § 1988

53. Plaintiff realleges and reavers all previous paragraphs as if fully stated herein.

54. Plaintiff is also entitled to reasonable costs and attorney fees pursuant to 42 USC §1988 and applicable statutes and laws.

**WHEREFORE**, Plaintiff prays for judgment against the defendant, for all damages lawfully entitled to, as may be determined and awarded by a jury, and for such other and further relief as may be deemed appropriate by the jury and this Court, including attorney fees and costs.

Respectfully Submitted,

ATTORNEY FOR PLAINTIFF

*/s/ Richard A. Hricik*

Richard A. Hricik (#7649)
THE LAW OFFICES OF
RICHARD A. HRICIK, PA
941 Houston Northcutt Blvd. Ste 204
Mt. Pleasant, SC 29464
(t) 843.849.0136
Richard@CharlestonLawyer.com

Charleston, South Carolina
January 14, 2021

**Trial by Jury Requested
pursuant to FRCP 38**

*/s/ Richard A. Hricik*
Richard A. Hricik (#7649)