IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Danielle Washington as Personal Representative of the Estate of Calvin Witherspoon, Jr., <br><br> Plaintiff, <br><br> v. <br><br> Housing Authority of the City of Columbia a/k/a Columbia Housing Authority a/k/a Columbia Housing, <br><br> Defendant. | C/A No. 3:21-148-JFA <br><br><br><br><br> **MEMORANDUM, OPINION, AND ORDER** |

This matter is currently before the court on Defendant Housing Authority of the City of Columbia's motion to dismiss for failure to state claim. (ECF No. 17). Specifically, Defendant avers that Plaintiff fails to allege facts sufficient to establish that the Defendant violated Calvin Witherspoon, Jr.'s constitutional substantive due process rights brought under 42 U.S.C. § 1983. Having been fully briefed and argued before the court, this matter is now ripe for review.

## I.   FACTUAL AND PROCEDURAL HISTORY

For purposes of this motion, all facts alleged in the Amended Complaint (ECF No. 14) are accepted as true[1]. This case arises out of Calvin Witherspoon Jr.'s death on January 17, 2019 due to acute carbon monoxide toxicity emitted by a gas-burning furnace in his apartment unit. At the time of his death, Witherspoon resided at Allen Benedict Court

---

[1] Although the instant motion is a 12(b)(6) motion, both parties agreed that substantial amounts of information were exchanged between the parties prior to filing this federal lawsuit.

1

("ABC") Apartments in unit J-3 in Columbia, South Carolina. The subject furnace was installed in apartment J-1 and connected to Witherspoon's but separated by another apartment. Plaintiff alleges that the subject furnace was over 30 years old. The release of carbon monoxide gas inside the J-units caused two known deaths and several bodily injuries. Plaintiff avers that Defendant failed to properly maintain the furnace and likewise failed to install carbon monoxide detectors in contravention of South Carolina law. Plaintiff Danielle Washington, Witherspoon's daughter, was appointed Personal Representative of Witherspoon's estate. Defendant is a public housing authority formed and operated under the laws of South Carolina that owned ABC.

Plaintiff alleges that by installing and operating gas burning furnaces that emitted carbon monoxide at ABC, the Defendant subjected tenants to a lethal danger and that tenants, like Witherspoon, were entitled to a heightened duty of protection due to contractual lease provisions and personal vulnerabilities. Specifically, Plaintiff alleges that the Defendant acted pursuant to official or unofficial policies with recklessness and deliberate indifference constituting a conscious disregard to Witherspoon's Fourteenth Amendment rights to bodily integrity. Plaintiff also alleges a cause of action for inadequate training and supervision pursuant to these policies.

Prior to filing the instant lawsuit, Plaintiff and Defendant settled Plaintiff's state law claims without the need for Plaintiff to file suit in state court. Their settlement agreement specifically provided that Plaintiff may pursue a § 1983 claim.

## II. LEGAL STANDARD

A complaint may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8 of the FRCP, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Atlantic Corp. v. Twombly*, 550 U.S. 544, 580 (2007).

In reviewing the adequacy of a complaint, a court "should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. According to the U.S. Court of Appeals for the Fourth Circuit, "a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs.*, 7 F.3d at 1134.

## III. ANALYSIS

Defendant primarily argues that Plaintiff's allegations assert mere negligence claims and do not rise to the constitutional threshold of knowledge and intent needed for a § 1983 claim. Thus, Plaintiff has failed to state a claim and the Amended Complaint must be dismissed.

In essence, Plaintiff alleges that Defendant allowed the ABC apartments to fall into a state of disrepair while ignoring its duty to prevent harmful situations such as properly maintaining furnaces or failing to install inexpensive carbon monoxide detectors. Plaintiff contends that these actions constitute deliberate indifference that proximately caused Witherspoon's death.

Section 1983 imposes liability on state actors who cause the "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. The Supreme Court has held that "municipalities and other local government units [are] included among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Under the doctrine announced in *Monell*, a local government entity can be sued under § 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. A local governing body "cannot be held liable solely because it employs a tortfeasor"; instead, the constitutional harm must be the direct result of "action pursuant to official municipal policy of some nature." *Id*. at 691 (emphasis omitted).

"Municipal policy may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (internal citations omitted). "Outside of such formal decisionmaking channels, a municipal custom may arise if a practice is so

4

'persistent and widespread' and so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* (citing *Monell* 436 U.S. at 691).

Furthermore, "municipal liability will attach only for those policies or customs having a 'specific deficiency or deficiencies ... such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)).

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979)). Here, Plaintiff is asserting claims for violation of Witherspoon's substantive due process rights established by the Fourteenth Amendment.

Plaintiff claims that the Defendant "acted with recklessness and deliberate indifference constituting a conscious disregard to the clearly established Fourteenth Amendment rights of [Witherspoon]." (ECF No. 14, ¶ 47). Accordingly, Plaintiff has asserted two "direct *Monell* claims" for unconstitutional official policy and unconstitutional unofficial policy, as well as an "indirect *Monell* claim" for inadequate training and supervision.

Although Defendant argued before the court that prior courts have utilized differing language in varying situations, the parties appear to agree that the standard to be employed

in this case is a "deliberate indifference" standard[2]. This standard requires conduct that is more than negligence but less than intentional. *Dean for & on behalf of Harkness v. McKinney*, 976 F.3d 407, 414 (4th Cir. 2020) (recounting the "culpability spectrum" described in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)). Accordingly, to "establish a substantive due process violation, the plaintiff must show that [Defendant's] behavior was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Dean for & on behalf of Harkness v. McKinney*, 976 F.3d 407, 413 (4th Cir. 2020) (cleaned up).

Here, Plaintiff avers that 30 years of inadequate and incomplete furnace maintenance combined with a failure to install legally required carbon monoxide detectors made Witherspoon's death "inevitable." Plaintiff's attorney emphasized at oral argument that this failure should be considered especially egregious, or conscious shocking, given the deadly nature of carbon monoxide and the difficulty in detecting exposure without mechanical assistance. Thus, this history of inaction constitutes "numerous customs, policies and choices made by the Defendant over decades that caused the death of Calvin Witherspoon and demonstrated a deliberate indifference to whether or not the Defendant was poisoning him and other tenants and whether or not those tenants would die." (ECF No. 20, p. 6).

---

[2] Plaintiff argues against the use of an "intent to injure" standard in her Response. (ECF No. 20). However, Defendant appears to affirm that the question presented here turns on the use of the deliberate indifference standard within its Reply brief. (ECF No. 21) ("[T]he narrow issue present in this case: . . . the Defendant acted with indifference toward Witherspoon's rights to a level that also shocks the conscious to overcome the presumption that this claim should instead proceed as a state-law tort action.").

Although Plaintiff presents a compelling argument, this Court disagrees. The Amended Complaint alleges that Defendant was deliberately indifferent in a number of ways.[3] However, Plaintiff's arguments focus on those actions alleged to have a closer causal connection to Witherspoon's death. Namely, that Defendant failed to properly maintain the furnaces that emitted carbon monoxide and that Defendant failed to install carbon monoxide detectors at the ABC apartments.

Yet, even when all facts in the Amended Complaint are accepted as true, Plaintiff has not alleged that Defendant had any knowledge of an actual carbon monoxide leak or other similar dangerous conditions prior to Witherspoon's death. There are no allegations that specific prior complaints regarding furnaces or carbon monoxide were made to Defendant or that any specific Defendant employee had knowledge of any potentially dangerous condition. Instead, Plaintiff alleges that a failure to maintain certain furnaces or install detectors made an eventual death virtually certain. However, this type of argument has been rejected in other cases alleging municipal liability. Specifically, in *Carter v. Morris*, the Fourth Circuit rejected Plaintiff's claims of municipal liability because the Plaintiff had shown "no relevant incident prior to her own case of which the City could

---

[3] Although Plaintiff alleged a host of "conscious shocking" conduct such as willful mismanagement of resources and finances, insufficient budgeting, absence of oversight, and willful neglect of maintenance, repair and capital improvements across several different properties, the court is mindful that "a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

7

have had knowledge and in which it acquiesced." *Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999). This lack of knowledge is fatal to Plaintiff's claims.

Defendant asserts that the question presented in its motion to dismiss is a narrow one: Did the Defendant know of facts from which it could infer a substantial risk of serious harm to Witherspoon from carbon monoxide, that the Defendant did infer the harm, and that the Defendant acted with indifference toward Witherspoon's rights to a level that also shocks the conscious to overcome the presumption that this claim should instead proceed as a state-law tort action.[4]

A review of the Amended Complaint reveals no allegations that Defendant was aware of any errant carbon monoxide emissions prior to Witherspoon's death. Accordingly, there is no indication Defendant had knowledge of a substantial risk of carbon monoxide exposure. Plaintiff instead argues that Defendant should have been aware of such a danger given that it had failed to maintain these furnaces for years and further failed to install carbon monoxide detectors. However, knowing that harm is possible is not equivalent to specific knowledge that a substantial risk is likely to occur. Plaintiff's argument is more akin to the duty element of a negligence claim. As held repeatedly, "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Moreover, Plaintiff fails to allege facts showing

---

[4] Plaintiff advocates for a similar rationale by citing to *Guertin v. Michigan,* 912 F.3d 907, 924-26 (6th Cir. 2019),which stated that "plaintiffs must show the government officials knew of facts from which they could infer a substantial risk of serious harm, that they did infer it, and that they acted with indifference toward the individual's rights."

Defendant did infer such a harm when presented with specific facts. Thus, even when accepting all facts within the Amended Complaint as true, Plaintiff has still failed to state a claim for relief.

Plaintiff attempts to analogize this case with the case of *Davis v. New York City Housing Authority,* 379 F.Supp.3d 237, 256 (S.D.N.Y. 2019), wherein the court found that the plaintiff had adequately pled a § 1983 claim arising out of a failure to provide residents with heat on a deliberate indifference standard. There, the court noted that a "kind of deliberate indifference that shocked the conscience" was properly pled where the complaint alleged "recurrent nature of the heating problems in the city's public housing and the [defendant's] awareness of the problems" along with engaging in an alleged cover-up of those recurrent complaints. *Davis v. New York City Hous. Auth.*, 379 F. Supp. 3d 237, 256 (S.D.N.Y. 2019).

However, Plaintiff's Amended Complaint in the instant action does not allege recurring instances of carbon monoxide poisoning or that Defendant was aware of such problems. Instead, Plaintiff's Amended Complaint forces the inferential leap that because ABC apartments had furnaces, they would inevitably cause a death if not properly maintained. Although it is reasonable to argue that such a death is merely likely to happen in the long run, the facts as alleged do not show that Witherspoon's death was inevitably bound to happen, sooner or later. *See Carter v. Morris*, 164 F.3d 215, 219 (4th Cir. 1999)("Although these incidents may tend to show that there is some specific deficiency in a city policy, or at least a known but uncorrected custom or usage on the part of city police officers, there is no affirmative link between the deficiency this evidence suggests

9

and the particular violations of which [Plaintiff] complains. Past incidents of excessive force do not make unlawful arrests or unreasonable searches or seizures almost bound to happen, sooner or later, rather than merely likely to happen in the long run.") (internal citations and quotations omitted).

Additionally, Plaintiff attempts to utilize the Sixth Circuit case of *Guertin v. State* as support for her claims here. In *Guertin*, the court held that plaintiffs had properly pled claims for deliberate indifference arising out of the lead-contamination and years-long poisoning of the water supply of Flint, Michigan. *Guertin v. State*, 912 F.3d 907, 921 (6th Cir. 2019). There, the court of appeals agreed with the district court that "a government actor violates individuals' right to bodily integrity by knowingly and intentionally introducing life-threatening substances into individuals without their consent, especially when such substances have zero therapeutic benefit." *Guertin v. State*, 912 F.3d 907, 921 (6th Cir. 2019). There, the court stated that the deliberate indifference standard was a "particularly high hurdle, for plaintiffs must show the government officials knew of facts from which they could infer a substantial risk of serious harm, that they did infer it, and that they acted with indifference toward the individual's rights." *Guertin v. State*, 912 F.3d 907, 926 (6th Cir. 2019)(internal citations and quotations omitted).

In contrast, Plaintiff here does not allege that life-threating substances (carbon monoxide) were intentionally introduced without consent. Rather, Plaintiff avers that carbon monoxide was likely to be errantly introduced due to lack of maintenance. Additionally, Plaintiff's Amended Complaint fails to allege facts showing that government officials knew specific facts from which they could infer a substantial risk of harm to

10

residents like Witherspoon and did so infer. Although surely tragic, Witherspoon's passing was the first indication that carbon monoxide had leaked into one of the ABC apartments. This case differs greatly from those cited above wherein the defendants were confronted with repeated complaints of dangerous conditions of lead poisoning or sub-zero temperatures yet engaged in subsequent conduct to subvert these complaints[5]. Knowing a remote danger is possible is not equivalent to knowing that the danger has occurred, caused great bodily harm, and is certain to occur again unless remediated.

Conversely, Defendant compares the instant case to *Walker v. E I Du Pont De Nemours & Co.*, No. 2:16 CV 367, 2018 WL 6198447, at *1 (N.D. Ind. Nov. 27, 2018). In that action, plaintiff residents of a public housing complex asserted § 1983 claims based on exposure to lead and arsenic contamination at the site of the complex. Those plaintiffs alleged that the defendant housing complex knew of the contaminants for more than 30 years and intentionally concealed the fact of the contamination from them. There, the court flatly rejected plaintiff's Fourteenth Amendment claims by stating that the "Constitution does not provide a substantive due process right to protection from a hazardous or dangerous condition, even when a governmental entity creates exposure to that condition." *Walker v. E I Du Pont De Nemours & Co.*, No. 2:16 CV 367, 2018 WL 6198447, at *2

---

[5] In both the *Davis* and *Guertin* cases, the court emphasized that their respective defendants' actions shocked the conscious because they had engaged in affirmative efforts to cover-up prior complaints. *Guertin v. State*, 912 F.3d 907, 928 (6th Cir. 2019)("As with the Flint defendants, these MDEQ defendants created the Flint Water environmental disaster and then intentionally attempted to cover-up their grievous decision. Their actions shock our conscience."); *Davis v. New York City Hous. Auth.*, 379 F. Supp. 3d 237, 257 (S.D.N.Y. 2019)("Making such a choice and engaging in the alleged cover-up, in the face of a long-standing heating problem . . . evidences the kind of deliberate indifference that shocks the conscience."). Plaintiff's Amended Complaint makes no such averments here.

(N.D. Ind. Nov. 27, 2018)(citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992)). Similar to Plaintiff's claims here, the plaintiffs in *Walker* did "not allege that [Defendant] forced them into a position of danger; it merely failed to affirmatively warn them of an existing danger." *Walker v. E I Du Pont De Nemours & Co.*, No. 2:16 CV 367, 2018 WL 6198447, at *3 (N.D. Ind. Nov. 27, 2018). However, the court concluded that "a knowing failure to warn does not state a substantive due process claim."[6] *Walker v. E I Du Pont De Nemours & Co.*, No. 2:16 CV 367, 2018 WL 6198447, at *3 (N.D. Ind. Nov. 27, 2018).

The Court agrees that the instant allegations are more comparable to those asserted in *Walker*. Likewise, Plaintiff's claims here fail to state a claim for violation of Witherspoon's Fourteenth Amendment right to bodily integrity.

Plaintiff's allegation here, taken as true, surely state a claim for negligence under South Carolina state law. Although Plaintiff attempts to further invoke violations of state statutory or regulatory law as the basis for her constitutional claims, these laws are more properly used to underlie a negligence *per se* claim. However, Plaintiff, having already settled her state law claims for negligence[7], seeks to convert these run-of-the-mill tort

---

[6] Although the court initially made these determinations in relation to the plaintiffs' "state-created danger" claim, the court applied the same reasoning to dismiss the subsequent substantive due process claim for violation of bodily integrity. *Walker v. E I Du Pont De Nemours & Co.*, No. 2:16 CV 367, 2018 WL 6198447, at *3 (N.D. Ind. Nov. 27, 2018)("There is little discernible difference between plaintiffs' claims in Counts I and II. And, as discussed in the previous section, there is no due process right to be protected from harm imposed by third parties, or to be warned of a known harm – even where the government has offered false assurances of safety.").

[7] Prior to filing the instant suit, Plaintiff and Defendant entered into a settlement agreement resolving all of Plaintiff's state law claims but allowing leave to pursue a 42 U.S.C. § 1983 claim.

claims into constitutional violations. *Guertin v. State*, 912 F.3d 907, 923 (6th Cir. 2019)("[T]he shocks-the-conscience test is the way in which courts prevent transforming run-of-the-mill tort claims into violations of constitutional guarantees."). The Court declines such an invitation. To hold otherwise would essentially make any arm of the state an insurer of citizen safety. *See Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 126 (1992)("The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.")(quoting *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S., 189, 195 (1989)). Any tort resulting in bodily injury can be said to invade an individual's right to bodily integrity. However, without subjective knowledge that such a deprivation is virtually certain to occur, a defendant cannot be held liable for violation of one's Fourteenth Amendment substantive due process rights even when acting under color of state law.

Again, the facts of this case are surely tragic and the Court in no way condones the actions of Defendant as alleged. However, this case exemplifies the Supreme Court's cautionary instructions that the Due Process Clause of the Fourteenth Amendment does not transform every tort committed by a state actor into a constitutional violation. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs*., 489 U.S. 189, 202 (1989). Nor is the Fourteenth Amendment a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)(quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)); *see also Waybright v. Frederick Cty., MD*, 528 F.3d 199, 205 (4th Cir. 2008)("[T]he Supreme Court has established a strong presumption

13

that § 1983 due process claims which overlap state tort law should be rejected and the case, if diversity is lacking, sent to state court.").

The above analysis works to dismiss Plaintiff's direct *Monell* claims as well as the indirect claim for inadequate training. In *Spell v. McDaniel*, the Court stated that:

> Finally, a sufficiently close causal link must be shown between potentially inculpating training deficiency or deficiencies and specific violation. This requires first that a specific deficiency rather than general laxness or ineffectiveness in training be shown. It then requires that the deficiency or deficiencies be such, . . . as to make occurrence of the specific violation a reasonable probability rather than a mere possibility. In common parlance, the specific deficiency or deficiencies must be such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run.

*Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)(internal citations and quotations omitted).

As stated above, Plaintiff has failed to allege facts showing the alleged deficiencies made Witherspoon's death bound to happen rather than merely likely to happen. Thus, Plaintiff's direct and indirect claims must fail.

Additionally, the Court declines Plaintiff's request to again amend the Complaint. The Plaintiff has already been afforded one opportunity to amend her Complaint to assert any additional factual allegations garnered from the decedent's "tenant file." (ECF No. 12). Moreover, apart from merely requesting leave to amend the Complaint, Plaintiff failed to argue, either in briefing or at oral argument, what additional facts would be alleged in good faith which would warrant a different outcome. Thus, the alternative motion to amend is likewise denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 17) is granted and Plaintiff's request for leave to further amend her complaint is denied.

IT IS SO ORDERED.

August 31, 2021  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

15